# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

Case 1:22-cv-03177

HARRIET NICHOLSON,

*Plaintiff,*

v.

The Bank of New York Mellon fka the Bank
of New York Trustee for the
Certificateholders of CWMBS, Inc., CWMBS
Reforming Loan Remic Trust Certificates
Series 2005-R2,
Defendant

**FIRST AMENDED
COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Harriet Nicholson, files this First Amended Complaint, an independent equitable action pursuant to Fed. R. Civ. P. 60 (d)(1), Fed. R. Civ. P. 60 (d)(3), Fed. R. Civ. P. 60 (b)(3), Fed. R. Civ. P. 60 (b)(4), and Fed. R. Civ. P. 60 (b)(6)  to set aside a void Texas state court judgment for denial of due process, fraud on the court and lack of jurisdiction.

## JURISDICTION AND VENUE

 The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.

A federal court, may entertain a collateral attack on a state court judgment. See Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir.1987), cert. denied, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988).

Applying Texas law, a federal court may entertain a collateral attack on a state court judgment in four instances: 1) if the state court lacked jurisdiction over the party or his property; 2) if the state court lacked jurisdiction over the subject matter of the suit; 3) if the state court lacked jurisdiction to enter the particular judgment rendered; or 4) if the state court lacked the capacity to act as a court. Steph v. Scott, 840 F.2d 267, 270 (5th Cir. 1988).

Similarly, in O'Boyle v. Bevil, 259 F.2d 506 (5th Cir., 1958) the Court looked to the law of Texas to determine the permissible scope of collateral attack on a judgment rendered by a court of that state. Judge Tuttle, speaking for the Court, stated:

"* * * Questions as to the setting aside of judgments are difficult at best. This difficulty is increased when attack is made in a federal court on a state court judgment. There is one principle, however, that stands out clearly in this area of controversy. That is that in diversity cases, a federal court may set aside a state court judgment for equitable grounds that are recognized by the state as a basis for such action. When, as is true in Texas, a judgment can be set aside for want of jurisdiction or for fraud, the federal court, exercising its equity jurisdiction, can act similarly in a diversity case." 259 F.2d 506, at pp. 511-512. _Alleghany Corp. v. Kirby,_ 218 F.Supp. 164, 184 (S.D.N.Y.1963)

Under Texas Law, and we have said that Rooker-Feldman does not preclude review of void state court judgments. Burciaga v. Deutsche Bank Nat'l Tr. Co., 871 F.3d 380, 386 (5th Cir. 2017). United States v. Shepherd, 23 F.3d 923, 925 (5th Cir. 1994) (observing that the Rooker-Feldman doctrine would likely not bar federal court review of void state court judgments).

This is an independent action. This action does not seek to reverse the decision of the State Court but rather to prevent a grave miscarriage of justice:

i.   then-Judge Wade Birdwell committed fraud upon the Court by abusing his power in striking jurisdictionally indispensable parties that had been served and appeared in the Court; and

ii.  Judge Kimberly Fitzpatrick refused to rejoin Nationstar Mortgage and Harvey Law Group as necessary parties, yet, let them appear under the guise of "special appearances" to oppose Nicholson's motions against them; and

iii. Kelly Harvey, Texas attorney, fabricated evidence, "Abandonment of Acceleration" post-foreclosure - that was material in procuring judgment against Nicholson's claims for quiet title, trespass-to-try title, and declaration the note was time barred for BONYM and its agents.

"Where fraud is found, the party that used fraud should be deprived of the benefit of the judgment and any inequitable advantage gained. Courts should not forfeit truth for the sake of finality. . . ." _Leber-Krebs, Inc. v. Capitol Records,_ 779 F.2d 895, 901 (2d Cir.1985).

This independent action presents this court with a case likely never encountered in United States jurisprudence. A bank forecloses on a borrower's homestead, sells the home, obtains sole title through a substitute trustee's deed and obtains a judgment of possession.

Two years later, the bank, its legal counsel and agents act autonomously to rescind the sale, reinstate the loan, cancel the substitute trustee's deed and place title back in the name of the borrower without the borrower's knowledge or consent.

All done while in litigation with the homeowner in effective pursuit of a common goal to mislead the court, cover-up their errors and take advantage of an unwittingly pro se litigant to deny her equal and impartial justice.

Officers of the court, trial judges and attorneys, used the Courts as vehicles of fraud to steal Nicholson's home by striking jurisdictionally indispensable parties from the lawsuit after proper service and appearance in the lawsuit; failing to rejoin jurisdictionally indispensable parties as parties after repeated requests; and BONYM's attorney fabricated evidence that was material in obtaining judgment against Nicholson for quiet title, trespass-to-try-title and time barred loan documents.

**The Savings Clause of Rule 60(b) allows for an independent action asserting that judgment has been obtained by fraud perpetrated upon the court by a court officer.**

The savings clause of Rule 60(b) allows for an independent action asserting that a judgment has been obtained by fraud perpetrated upon the court by a court officer. See Fed. R. Civ. P. 60(b); Gleason, 860 F.2d at 558; Miller v. Shelton, 2006 WL 753187, at *4-*5 (W.D.N.Y. March 20, 2006). Under the theory that "a decision produced by fraud on the court is not in essence a decision at all and never becomes final," Kenner v. Comm'r of Internal Revenue, 387 F.2d 689, 691 (7th Cir. 1968), "[t]here is no statute of limitations for bringing a fraud upon the court claim." Williams v. Vaughn, 2005 WL 3348863, at * 2, n. 3 (E.D. Pa. Dec. 8, 2005)(citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 244 (1944)). This equitable p8ower to vacate a judgment obtained by a fraud upon the court was recognized by the Supreme Court in the Hazel-Atlas decision. See Leber-Krebs, Inc. v. Capitol Records, 779 F.2d 895, 899 (2d Cir. 1985).

In deciding an independent action, the Court "looks to traditional equitable principles." LinkCo, Inc. v. Akikusa, 615 F.Supp.2d 130, 134 (S.D.N.Y.2009) (internal quotation

marks omitted) (quoting Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 661 (2d Cir.1997)), aff'd sub nom. LinkCo, Inc. v. Naoyuki Akikusa, 367 Fed.Appx. 180 (2d Cir.2010). Under these principles, "[c]laimants must (1) show that they have no other available or adequate remedy; (2) demonstrate that movants' own fault, neglect, or carelessness did not create the situation for which they seek equitable relief; and (3) establish a recognized ground—such as fraud, accident, or mistake—for the equitable relief." Campaniello Imports, 117 F.3d at 662. Furthermore, "[a] party seeking to vacate a judgment in an independent action must show that permitting the judgment to stand would be a grave miscarriage of justice." LinkCo, 615 F.Supp.2d at 135 (internal quotation marks omitted); see also United States v. Beggerly, 524 U.S. 38, 47, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) ("[A]n independent action should be available only to prevent a grave miscarriage of justice.").

### Fed. R. Civ. P. 60(d)(3) permits a Petitioner to bring an independent action challenging an earlier judgment as caused by fraud on the court.

A fraud upon the court occurs where it is established by clear and convincing evidence "that a party has set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to a8djudicate a matter by. . . unfairly hampering the presentation of the opposing party's claim or defense." *New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.,* 432 Fed. Appx. 25 (2d Cir. 2011) (summary order) (quoting *Scholastic, Inc. v. Stouffer,* 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002)) (internal quotation marks omitted); *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.,* 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002); *see also Hargrove v. Riley,* No. 04 Civ. 4587, 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007); *Shangold v. Walt Disney Co.,* No. 03 Civ. 9522, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (dismissing plaintiff's case with prejudice where plaintiff fabricated evidence and manipulated the judicial process); *Intelli-Check, Inc. v. TriCom Card Techs., Inc.,* No. 03 Civ. 3706, 2005 WL 3533153, at *11 (E.D.N.Y. Dec. 22, 2005).

Fraud on the court is a "wrong against the institutions set up to protect and safeguard the public." *Id.* It is because this kind of misconduct is an affront to the administration of justice that some of the ordinary procedural barriers to post-judgment relief are waived—for example, there is no time limitation for seeking relief from fraud on the court, and equitable bars like laches and unclean hands may not apply. *See id.*; *In re Old Carco LLC,* 423 B.R. 40, 51 (S.D.N.Y. 2010).

Indeed, a court may take action *sua sponte* to "expunge [a] judgment" obtained by fraud on the court. *Martina Theatre Corp. v. Schine Chain Theatres, Inc.,* 278 F.2d 798, 801 (2d Cir. 1960).

As the Second Circuit has routinely phrased it, fraud on the court embraces "only that species of fraud which does or attempts to[] defile the court itself, or is a fraud perpetrated by officers of the court *so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.*" *King v. First Am. Investigations, Inc.,* 287 F.3d 91, 95 (2d Cir. 2002) (emphasis added); *Martina,* 278 F.2d at 801. Similarly, the Second Circuit has said that fraud on the court "is limited to fraud which seriously affects the integrity of the normal process of adjudication." *King,* 287 F.3d at 95.

### The Savings Clause of Rule 60(b) allows for an independent action asserting any other reason that justifies relief.

Nicholson was denied her civil and procedural due process rights in the case subject of this suit because the trial court:

  i.   Then-judge Wade Birdwell struck Nationstar and Harvey Law Group from the lawsuit after proper service and appearance in the lawsuit.
  ii.  Then-judge Wade Birdwell proceeded to judgment in the absence of jurisdictionally indispensable parties, Nationstar and Harvey Law Group.
  iii. Judge Kimberly Fitzpatrick repeatedly refused to rejoin Nationstar and Harvey Law Group, jurisdictionally necessary and indispensable parties needed for Nicholson to be afforded complete relief in the lawsuit.
  iv.  Judge Kimberly Fitzpatrick allowed Nationstar and Harvey Law Group (stricken parties) make appearances under the guise of "special appearances"- yet, depriving Nicholson of her right to seek any relief against the p2urported "stricken parties".

### Nicholson meet all three requirements for an independent equitable action conferring equity jurisdiction upon this Court.

First, Nicholson have no other available or adequate remedy to correct the trial court proceeding to judgment in the absence of indispensable parties and the Second Court of Appeals abused its power in refusing to correct the trial court's fundamental error.[1] On March 31, 2022, the Second Court of Appeals affirmed the trial court's "Amended Final

---

[1] *Dueitt v. Dueitt,* 802 S.W.2d 859, 861 (Tex. App.-Houston [1st Dist.] 1991, no writ) (The fai2lure to join a jurisdictionally indispensable parties constitutes fundamental error, which an appellate court is bound to notice if the error is apparent from the face of the record.

Judgment" in the absence of jurisdictionally indispensable parties resulting in fundamental jurisdictional error.[2]   The Second Court of Appeals expressed its bias in City of San Francisco v. EXXON MOBIL CORPORATION, No. 02-18-00106-CV (Tex. App. June 18, 2020) IX.Some Final Thoughts. which stated, "We confess to an impulse to safeguard an industry that is vital to Texas's economic well-being."[3] A litigant has the fundamental right to fairness in every proceeding. Fairness is upheld by avoiding even the appearance of partiality. See, e.g., Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980).

Secondly, Nicholson vehemently contested the trial court proceeding to judgment in the absence of jurisdictionally indispensable parties. Nicholson has clean hands. On May 18, 2017, Nicholson added David Stockman, Nationstar Mortgage, Harvey Law Group, and Countrywide Home Loans, Inc. as parties in the Sixth Amended Petition.

Third, Nicholson is entitled to equitable relief because officers of the Court (the trial court judges, justices, and Defendants' attorney)  committed fraud upon the court by denying Nicholson procedural due process; BONYM's attorney manufactured evidence that was material in obtaining judgment against Nicholson; and proceeding to judgment without Nationstar and HLG, jurisdictionally indispensable parties that were sued, served, and repeatedly appeared in the trial court under the guise of "special appearances".

Lastly, permitting the "Amended Final Judgment" procured by fraud to stand would be inequitable because Nicholson was denied due process;, trial court judges struck and failed to rejoin Nationstar and Harvey to the lawsuit to afford complete relief; attorneys

---

[2] *Willard v. Davis,* 881 S.W.2d 907, 911 (Tex. App. — Fort Worth 1994, orig. proceeding) (Jurisdiction over indispensable parties to a suit is essential top the court's right to proceed to judgment. *Eddowes v. Oswald,* 621 S.W.2d 843, 846 (Tex.App.—Fort Worth 1981, no writ). If the trial court proceeds to judgment without an indispensable party, it commits fundamental error. *Id.* 8Similarly, if jurisdiction had not been invoked in the trial court, this court would err if we were to address the merits of relator's case.)

[3] Justice Wallach concluded in Nicholson v. THE BANK OF NEW YORK MELLON, No. 02-20-00379-CV (Tex. App. Mar. 31, 2022). "Under the circumstances presented here, we cannot say that the trial court abused its broad discretion by granting the motion to strike. *See Bennett,* 525 S.W.3d at 653-54.**."**By the time Nicholson sought to add Nationstar and Harvey Law Group in May 2017, the case had already been pending for five years. Justice Wallach further stated, "**Having exhausted a decade in litigation, Nicholson might be more successful taking her arguments to the Legislature.**"

fabricated and used evidence that was material in procuring the fraudulent judgment against Nicholson's quiet title, trespass-to-try title, and declaratory relief.

The United States Supreme Court in Marshall v. Holmes, 141 U.S. 589, 12 S. Ct. 62, 35 L.Ed. 870 (1891), pointed out, as to the jurisdiction of the Federal Court in such an action:

"* * * While it cannot require the state court itself to set aside or vacate the judgments in question, it may, as between the parties before it, if the facts justify such relief, adjudge t8hat Mayer shall not enjoy the inequitable advantage obtained by his judgments. A decree to that effect would operate directly upon him, and would not contravene that provision of the statute prohibiting a court of the United States from granting a writ of injunction to stay proceedings in a state court. It would simply take from him the benefit of judgments obtained by fraud." 141 U.S. at p. 599, 12 S.Ct. at p. 65, 35 L.Ed. 870. _Alleghany Corp. v. Kirby,_ 218 F.Supp. 164, 169 (S.D.N.Y.1963)

## STATEMENT OF THE CASE

Plaintiff filed the independent equitable action to prevent a grave miscarriage of justice for fraud upon the Court by judges, justices, and attorneys for want of jurisdiction; and denial of due process:

i.   On June 15, 2017, then-judge Wade Birdwell,[4] former 342nd District Court Judge, committed fraud upon the court by striking jurisdictionally indispensable parties, Nationstar Mortgage and Harvey Law Group after being sued, served, and appeared in the trial court upon joint tortfeasors' request.

---

[4] During the interim, the then-judge of the 342nd Court, the Honorable J. Wade Birdwell, was appointed to the Second Court of Appeals. See Office of the Governor of Texas, Governor Abbott Appoints Birdwell Justice of the Second Court of Appeals (Nov. 10, 2017), https://gov.texas.gov/es/news/post/governor-abbott-appoints-birdwell-justice-ofthe-second-court-of-appeals (last visited Mar. 23, 2022). The Honorable Kimberly Fitzpatrick was appointed to the 342nd Court on June 26, 2018. See Office of the [4] During the interim, the then-judge of the 342nd Court, the Honorable J. Wade Birdwell, was appointed to the Second Court of Appeals. See Office of the Governor of Texas, Governor Abbott Appoints Birdwell Justice of the Second Court of Appeals (Nov. 10, 2017), https://gov.texas.gov/es/news/post/governor-abbott-appoints-birdwell-justice-ofthe-second-court-of-appeals (last visited Mar. 23, 2022). Governor of Texas, Governor Abbott Appoints 2Fitzpatrick Judge of the 342nd Judicial District Court (June 26, 2018), https://gov.texas.gov/news/post/governor-abbott-appointsfitzpatrick-judge-of-the-342nd-judicial-district-court (last visited Mar. 23, 2022)

```
10              THE COURT:  Okay.  So what is the

11   relationship of Nationstar to this litigation, if any?

12              MR. MCCAIN:  It -- it -- it doesn't have one,

13   Your Honor.  The -- it is the current servicer for the -- for

14   the loan, but it's -- it's post foreclosure, so it is -- it's

15   the servicer.  We -- I don't -- I don't represent Nationstar.

16   I don't want to -- to falsely say anything about them, but

17   I'm -- I'm only here on -- on behalf of Bank of New York.

18              THE COURT:  I understand --

19              MR. MACCAIN:  So --

20              THE COURT:  -- but you've -- you've -- you

21   filed the motion to strike Nationstar --

22              MR. MCCAIN:  That -- that's correct.

23              THE COURT:  -- the defendants.  So you need

24   to make sure that you explain to me and put on the record why

25   my granting your motion is appropriate.
```

   ii.   Kelly Harvey, licensed Texas attorney, committed fraud upon the court by manufacturing evidence "Abandonment of Acceleration" post-foreclosure that was material in procuring favorable judgment for BONYM and its agents.

  iii.   Kelly Harvey, licensed Texas attorney, appended the manufactured evidence to her perjurious affidavit to support BONYM's and its agents summary judgment to procure a favorable judgment in the trial court.

  iv.   On August 18, 2017, then-judge Wade Birdwell declared Nicholson the prevailing party, awarded costs, and declared  the Substitute Trustee's Deed conveyed to BONYM null and void. (Mr. Danner – BONYM's attorney)



```
25              THE COURT:  Okay.  She is entitled to cost,
```

**Holly Bishop, CSR**
**Official Court Reporter, 342nd District Court**

**VOLUME 7 OF 20 VOLUMES**                                    64

```
1   though.  Would you agree that she's the prevailing party

2   under the circumstances?

3               MR. DANNER:  I'm not going to argue.
```

v.   On August 4, 2020, Judge Kimberly Fitzpatrick, 342nd District Court Judge,
committed fraud upon the Court by intentionally failing to rejoin Nationstar,
indispensable party; after acknowledging Nationstar was a necessary party to
mediate.  (Ms. Alexander is non-party's attorney.)

```
11              THE COURT:  Ms. Alexander, can you take

12   yourself off mute for a moment?

13              MS. ALEXANDER:  That's correct, Your Honor.

14   Nationstar has not been a party to this or any other suit

15   involving Ms. Nicholson since 2016, Your Honor, and --

16              THE COURT:  It would not do good to mediate

17   in this case really, because the owner and servicer is not a

18   party anymore.

19              MS. NICHOLSON:  Excuse me, Your Honor?

20              THE COURT:  I'm saying it would do no good to

21   mediate as far as working out where you are in your note at

22   the moment, because Nationstar is the owner and servicer of

23   the note, right, and they're not a party to this case

24   anymore.
```

vi.   Judge Kimberly Fitzpatrick, Tatiana Alexander, and Matthew Durham were
complicit in committing fraud upon the Court by allowing Nationstar's  and the
Harvey Law Group's counsel make general appearances under the guise of "special
appearances" (material misrepresentation).[5]  "[A] party enters a general appearance
when [he] (1) invokes the judgment of the court on any question other than the

---

[5] Plaintiff requests the court take judicial notice of its own records pursuant to FRCP 201,  Document 6  Pages 21,
general appearances of  Tatiana Alexander and Matthew Durham under the guise of special appearances for
Nationstar Mortgage and Harvey Law Group

court's jurisdiction, (2) recognizes by [his] acts that an action is properly pending, or (3) seeks affirmative action from the court." Dawson-Austin v. Austin, 968 S.W.2d 319, 322 (Tex.1998).

    a.  On August 4, 2020, Tatiana Alexander, attorney for stricken parties Harvey Law Group and Nationstar Mortgage, made a general appearance under the guise of a "special appearance" to oppose Plaintiff's Motion to Reinstate Stricken Parties.

```
19              MS. ALEXANDER:  Good morning, Your Honor,

20   Tatiana Alexander.  My clients Nationstar Mortgage and Harvey

21   Law Group are not parties to this matter.  We're making a

22   special appearance for purposes of defending or opposing the

23   Plaintiff's motion to reinstate.
```

    b.  On October 16, 2020, Matthew Durham, attorney for stricken parties Nationstar Mortgage and Harvey Law Group, made a general appearance under the guise of a "special appearance" to oppose Plaintiff's Motion for Sanctions against Nationstar Mortgage, McGuire Woods, and Matthew Durham.

```
4               MR. DURHAM:  Hi, Judge.  Matt Durham here for

5    Nationstar Mortgage.  It's a special appearance.  We're not a

6    party but keep getting named by the plaintiff in these

7    motions.
```

  vii.  Judge Kimberly Fitzpatrick, 342nd District Court Judge, committed fraud upon the Court by granting stricken parties, Nationstar Mortgage and Harvey Law Group, relief in the trial court.

    a.  On August 4, 2020, Judge Kimberly Fitzpatrick signed the "Order Denying Plaintiff's Motion to Reinstate Stricken Parties" submitted by Nationstar Mortgage.

    b.  On October 16, 2020, Judge Kimberly Fitzpatrick signed "Order Denying Plaintiff's Amended Motion for Sanctions against Nationstar Mortgage and McGuire Woods".

  viii.  Judge Kimberly Fitzpatrick, 342nd District Court Judge, committed fraud upon the Court by proceeding to final judgment without rejoining jurisdictionally indispensable parties, Nationstar Mortgage and Harvey Law Group.

ix.   Nicholson vehemently contested the trial court proceeding to judgment in the absence of Nationstar Mortgage and Harvey Law, jurisdictionally indispensable parties by the following:

   a.   On July 24, 2020, Nicholson filed "Plaintiff's Opposed Motion to Reinstate Stricken Parties" arguing Nationstar Mortgage and the Harvey Law Group were absent indispensable parties needed for just adjudication, requesting the Court to rejoin them, and the court denied.

   b.   On August 6, 2020, Nicholson filed "Plaintiff's Motion to Reconsider Order Denying Plaintiff's Motion to Reinstate Stricken Parties.

   c.   On August 13, 2020, Nicholson filed "Plaintiff's Verified Plea in Abatement" arguing the court could not proceed to judgement in the absence of Nationstar Mortgage and Harvey Law Group, and the trial court denied.

   d.   On August 21, 2020, Nicholson filed "Plaintiff's Motion to Vacate/Reconsider Order Denying Verified Plea in Abatement" arguing the court could not and should not proceed to judgment in the absence of Nationstar Mortgage and Harvey Law Group and the trial court denied.

It would be a travesty of justice if the trial court's judgment is permitted to stand because the officers of the court denied Nicholson fair and impartial justice committing fraud on the Court and the judgment was obtained by BONYM's attorney manufactured evidence/

## I.   Relevant Facts

### A.   Loan Origination, "Void" Assignments And Break In The Chain Of Title

1.   On January 18, 2001, Nicholson purchased real property commonly known as 2951 Santa Sabina Dr., Grand Prairie, Texas 75052, Tarrant County ("Homestead" "Property").

2.   MERS is identified as the "Beneficiary" in the Deed of Trust. [6]

---

[6] "MERS always acts simultaneously as both beneficiary and nominee under the deed of trust." *DHI Holdings, LP v. Sebring Capital Partners, Ltd. P'ship,* No. 14:17-CV- 2930, 2018 WL 2688474, at *2 (S.D. Tex. June 5, 2018).

3.      The purchase of the Property was funded by executing a Promissory Note in the amount of $125,000.00 and secured by a Deed of Trust in favor of the original lender, Mid America Mortgage Inc. (collectively, "the Loan").

4.      Two days prior to execution of the Note and Deed of Trust, **on January 16, 2001, Mid America Mortgage, Inc. assigned the Nicholson Note and Deed of Trust to Countrywide Home Loans.**

5.      The loan servicer was Countrywide Home Loan Servicing, Inc.

6.      Thereafter, **on May 12, 2012, MERS assigned the Note and Deed of Trust to Bank of New York Mellon**.[7]

7.      The loan servicer was Bank of America.

8.      Bank of America assigned the loan servicing to Nationstar on December 1, 2014.

9.      On **August 20, 2014, Bank of New York Mellon attorney David C. Romness emailed Nicholson and apprised her in relevant part that Bank of New York Mellon was not the owner of the property** as follows:

> "…The Notice of Sale listed the wrong location of the sale and the sale was no good because of this. **Thus, the bank is no longer considered the owner of the property, nor has a right to possession.** This Note is put back in place and owed accordingly.…"

10.     Thereafter, **on February 17, 2015, the non-existent entity Countrywide who merged with Bank of America in 2008, unlawfully resurrected from the merger to assign the Note and Deed of Trust to Bank of New York Mellon** ("BNYM"). [8]

---

[7] "Under Texas law, a non-judicial foreclosure may be initiated by the current mortgagee including: 'the grantee, beneficiary, owner, or holder of a security instrument;' **a 'book entry system;'** or 'the last person to whom the security interest has been assigned of record." *Farkas v. GMAC* Mortg., L.L.C., 737 F.3d 338, 342 (5th Cir. 2013) (quoting Tex. Prop. Code § 51.0001(4)).

[8] (*See* **Securities and Exchange Commission Link @ pg. 6: https://www.sec.gov/litigation/complaints/2009/comp21068.pdf**

11.     Based on the August 2008 Countrywide merger with Bank of America and the August 20, 2014 E-mail from the Bank of New York Mellon attorney (David Romness), the "2015" purported Countrywide assignment to Bank of New York Mellon was void *ab initio.*

12.     The loan servicer was Nationstar.

13.     Thereafter, **on December 12, 2017, Bank of New York Mellon purported to assign the Note and Deed of Trust to Nationstar Mortgage, LLC ("Nationstar").**

14.     Based on the August 2008 Countrywide merger with Bank of America and the August 20, 2014 E-mail from the Bank of New York Mellon attorney (David C. Romness), the "2017" purported assignment from Bank of New York Mellon to Nationstar was void *ab initio.*

15.     Nationstar alleges to be the current holder and owner of the Loan when they have not received any valid assignment of the Nicholson Note and Deed of Trust.

16.     An unbroken chain of title prior to August 20, 2014 from Bank of New York Mellon to Nationstar has not been established on this record.

**B.     The Bank Of New York Mellon Defective Mandatory Non Judicial Foreclosure Notice Mailed To Plaintiff And "Void" Foreclosure Sale Due To Non-Compliance With Texas Property Code § 51.002**

17.     There is no dispute that Nicholson fell in arrears due to Bank of America falsely accusing her of being in bankruptcy and rejecting her payment of $11,000 to resolve a fabricated default.

18.     On June 6, 2011, Nicholson was served with Notice of Default and Intent to Accelerate ("2011 Notice of Default") via certified mail at the Property's address.

---

(On July 1, 2008, Countrywide merged with Bank of America and is now a wholly owned subsidiary of Bank of America. Countrywide's remaining operations and employees have been transferred to Bank of America, and Bank of America ceased using the Countrywide name in April 2009)

19.     On April 24, 2012, Bank of New York Mellon foreclosure counsel served Nicholson with a Notice of Acceleration ("2012 Notice of Acceleration") via certified mail at the Property's address which indicated that the loan had been accelerated.

20.     On June 12, 2012, Bank of New York Mellon foreclosure counsel served Nicholson with a Notice of Foreclosure Sale ("2012 Notice of Foreclosure Sale") via certified mail at the Property's address which indicated a deed of trust foreclosure.

21.     In relevant part the Notice of Foreclosure Sale provided a July 3, 2012 foreclosure sale date.

22.     However, the foreclosure sale address was scheduled in a different county and was non-compliant with the Texas Property Code § 51.002(d).

23.     The Notice of Foreclosure Sale provided the physical address as 600 Commerce St. Dallas Texas, Dallas County, which was not the county where the Nicholson Property was located.

24.     Pursuant to Texas Property Code 51.002 – Sale of Real Property Under Contract Lien at § 51.002(a), the sale of real property is to be conducted in the county where the property is located as follows:

> (a)   Except as provided by Subsection (a-1)**, a sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month. Except as provided by Subsection (h), <u>the sale must take place at the county courthouse in the county in which the land is located</u>**, or if the property is located in more than one county, the sale may be made at the courthouse in any county in which the property is located. The commissioners court shall designate the area at the courthouse where the sales are to take place and shall record the designation in the real property records of the county. The sale must occur in the designated area. If no area is designated by the commissioners court, the notice of sale must designate the area where the sale covered by that notice is to take place, and the sale must occur in that area.

25.     There is no dispute the Nicholson Property was located in Tarrant County, not Dallas County.

26.     Pursuant to Texas Property Code 51.002 – Sale of Real Property Under Contract Lien at § 51.002(d), the notice of sale of real property is to be mailed to the debtor as follows:

> (d)  **Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real2 property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).** The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

27.     Therefore, because the July 3, 2012 foreclosure sale was conducted in the incorrect county, the foreclosure sale was void as a matter of law.

**C.  The Bank Of New York Mellon "Void" November 1, 2012 Judgment On Possession Relied On Non-Compliant Texas Property Code § 51.002 Notice of Foreclosure Sale To Plaintiff**

28.     On September 5, 2012 the Bank of New York Mellon filed their Original Petition For Forcible Detainer in the Justice Of The Peace Court, Precinct 7, Position No. 1 in Cause No. E00067238 ("Original Eviction Petition").

29.     In relevant part, the Original Eviction Petition stated:

> "…**The Property was purchased at a non-judicial foreclosure sale as evidenced by a Deed (the ", Trustees Deed"), a true and correct copy which is attached hereto as "Ex-B".** Plaintiff is the owner of the Property and is the grantee of said Trustee's Deed, or a successor in title to said grantee. **The Trustee's Deed sets forth that the sale of the Property occurred after a declaration of default and the giving of notices, all in the manner provided by law, and pursuant to a Deed of Trust described therein** conveying the Property to secure payment of a promissory Note…."

30. On November 1, 2012, the Bank of New York Mellon obtained a Judgement on Possession from the County Court at Law No. 1 in Cause No. 2012-006670-1.

31. Therefore, because the November 1, 2012 Judgement on Possession relied on a defective Substitute Trustees Deed obtained through a foreclosure sale conducted in the incorrect county, the judgment on possession was void as a matter of law.

**D. After The "2012" Defective Foreclosure Sale, No Entity Has Obtained A Valid Assignment With Legal Authority to Enforce The Note and Any Future Foreclosure Action Is Barred By The Statute of Limitations**

32. On June 6, 2011, Plaintiff was served with Notice of Default and Intent to Accelerate ("2011 Notice of Default") via certified mail at the Property's address.

33. On April 24, 2012, Defendants foreclosure counsel served Plaintiff with a Notice of Acceleration ("2012 Notice of Acceleration") via certified mail at the Property's address which indicated that the loan had been accelerated.

34. The July 3, 2012 foreclosure sale was conducted in the incorrect county and the foreclosure sale and Substitute Trustees Deed were void as a matter of law.

35. On August 20, 2014, Bank of New York Mellon attorney David C. Romness emailed Nicholson and apprised her in relevant part that Bank of New York Mellon was not the owner of the property as follows:

> "…**The Notice of Sale listed the wrong location of the sale and the sale was no good because of this**. **Thus, the bank is no longer considered the owner of the property, nor has a right to possession.** This Note is put back in place and owed accordingly.…"

36. Under Texas law, an action for foreclosure of a real property lien must be brought within four years of when the cause of action accrues. *See* Tex. Civ. Prac. & Rem. Code § 16.035(a). After the four-year limitations period expires, the real property lien becomes void and thus may no longer be foreclosed upon. *See id.* § 16.035(d). Where, as here, the note secured by the real property lien is payable in installments, "the four-year limitations period does not begin to

run until the maturity date of the last ... installment." *Id.* § 16.035(e).  But, if the note contains an option to accelerate payment upon default, "'the action accrues ... when the holder actually exercises its option to accelerate.'" *Alcala v. Deutsche Bank Nat'l Trust Co.*, 684 F. App'x 436, 438 (5th Cir. 2017) (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

37.     The current owner or holder of the Nicholson Note is unknown, because in every Texas state court proceeding, the Bank of New York Mellon has offered no evidence on this issue.

38.     A valid unbroken chain of title from the Bank of New York Mellon to Nationstar has not been established on this record and therefore, Nationstar is not entitled to foreclose on the Nicholson property, because the assignment underlying any of its claims are void.

39.     Nicholson maintains that on April 24, 2012, Defendants foreclosure counsel served her a Notice of Acceleration ("2012 Notice of Acceleration") via certified mail at the Property's address which indicated that the loan had been accelerated.

40.     Four years from the April 24, 2012 acceleration date is "April 24, 2016".  Any attempts to foreclose by any entity is barred by the statute of limitations.

**E. The "2012" Nicholson Lawsuit And Bank of New York Mellon Lawyers Acting In Concert With State Court Judges To Refuse To Comply With Texas Statutory and Texas Common Law Causing Protracted Litigation**

41.     On November 1, 2012, BONYM was granted "Judgment of Possession" in the eviction suit by virtue of the "Substitute Trustee's Deed" purportedly conveyed at a foreclosure sale. A foreclosure sale "transfers title from the debtor to another party, but it did not put the new owner in possession; it gives him a right to possession. Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 918 (Tex. 2013). Essentially, BONYM and its agents engaged in self-help

to cancel the substitute trustee's deed, acted autonomously which in this case, they had no authority to do.

42.     By foregoing the proper judicial procedures applicable to obtaining equitable relief, BONYM chose to forego the protections that would have been afforded by the judicial process.

43.     After foreclosure, the relationship between the mortgagor and mortgagee in those capacities ends. If the mortgagee purchases the mortgaged property, as BONYM did in this case, his interest in the property becomes an ownership interest. Smart v. Tower Land and Inv. Co., 597 S.W.2d 333 (Tex. 1980).

44.     The deed of trust was extinguished when the trustee's deed conveyed the property to BONYM, who was simultaneously the holder of the deed of trust. "The merger doctrine provides that `[w]hen a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed.'" Burlington Res. Oil & Gas Co. v. Tex. Crude Energy, LLC, 573 S.W.3d 198, 209 (Tex. 2019) (quoting Alvarado v. Bolton, 749 S.W.2d 47, 48 (Tex. 1988)). Thus, where "the terms of the deed ... vary from those contained in the contract," courts must look to the deed "alone to determine the rights of the parties." Alvarado, 749 S.W.2d at 48 (quoting Baker v. Baker, 207 S.W.2d 244, 249 (Tex. App.-San Antonio 1947, writ ref'd n.r.e.)). As such, the merger doctrine "operates when earlier contracts are `contradicted in the deed.'" Burlington, 573 S.W.3d at 209 (quoting Alvarado, 749 S.W.2d at 48).

45.     After merger took place and the deed of trust was extinguished, the deed of trust needed to be again executed by Nicholson to be effective.

46.     A party who loses possession in the eviction action may still sue in district court to obtain adjudication of its title. Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 919 (Tex. 2013).

47.     On November 5, 2012, Nicholson filed an Application for Temporary Restraining Order to stop a wrongful post-foreclosure eviction and adjudicate title.

48.     On May 28, 2014, BONYM admitted the substitute trustee did not auction Nicholson's property at the Dallas County, Texas courthouse on July 3, 2012, as attested to in the trustee's affidavit attached to the trustee's deed purportedly conveyed at the non-judicial foreclosure sale.

### *BONYM and its agents chose vigilantism to save its face from an invalid foreclosure sale using the Courts as vehicles of fraud.*

49.     On July 31, 2014, Recontrust Company, BONYM's foreclosure attorney for 2012 non-judicial foreclosure sale, executed the "Notice of Rescission" purporting to cancel the trustee's deed and reinstate foreclosed lien during the pendency of the wrongful foreclosure without Nicholson's knowledge or consent.

50.     Reconstrust Company, BONYM's foreclosure attorney, filing the "Notice of Rescission" was vigilantism to save its face for conducting an invalid foreclosure and escape a legal malpractice lawsuit. Gulf Coast Inv. Corp. v. Brown, 821 S.W.2d 160 (Tex.1991) (The Court in Gulf Coast held that tolling applied when an attorney's malpractice in conducting a non-judicial foreclosure resulted in a wrongful foreclosure action by a third-party against the client.)

51.     BONYM and its agents, judges and justices have used the Courts as vehicles of fraud; to steal Nicholson's home to cover-up and save Recontrust from a legal malpractice lawsuit.

52.     BONYM has a right to sue Reconstrust Company, foreclosure attorney, for attorney malpractice in conducting a non-judicial foreclosure that resulted in a wrongful foreclosure action by Nicholson. Gulf Coast Inv. Corp. v. Brown, 821 S.W.2d 160 (Tex.1991) (The Court in Gulf Coast held that tolling applied when an attorney's malpractice in conducting a non-judicial foreclosure resulted in a wrongful foreclosure action by a third-party against the client.)

53.     On or around August 31, 2014, BONYM's agent, Bank of America purportedly reinstated the foreclosed loan documents without Nicholson's consent or knowledge and failed to advise the federal court of  its change of position from owner of Nicholson's property post-foreclosure to lienholder post-foreclosure.

54.     On November 15, 2014, Bank of America sent Ms. Nicholson a letter which stated in relevant part: The servicing of your home loan will transfer to Nationstar Mortgage LLC on December 01, 2014 8purporting the foreclosed loan documents had been reinstated.

55.     On December 8, 2014, Nationstar Mortgage sent Nicholson a Welcome letter identifying BONYM as the noteholder of the purported reinstated foreclosed loan.

56.     On December 22, 2014, Nationstar Mortgage sent Ms. Nicholson a letter which stated in relevant part: Your account is now due for the 04/01/2011 payment, and subsequent payments. This is a demand for a payment of $80,603.28….Unless we receive full payment of all past-due amounts by the date above, we will accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property. This could result in the loss of yor property.

57.     On February 11, 2015, Alison Mayou, Nationstar Mortgage sent Ms. Nicholson a letter which stated in relevant part: This mortgage is presently in default. It is possible that it could be referred to an attorney for foreclosure action if not brought current.    This may result in additional costs.

58.     On April 19, 2016, the HLG sent Ms. Nicholson a letter purporting to abandon acceleration of the foreclosed loan after BONYM was granted Judgment of Possession as owner of the property by virtue of the "Substitute Trustee's Deed" purportedly conveyed at the July 3, 2012 non-judicial foreclosure sale.

59.     On June 6, 2016, Nicholson sent the Harvey Law Group a response to her "Abandonment of Acceleration Letter" advising BONYM's acceleration was irrevocable because it exercised its remedy to foreclose and was subsequently granted "Judgment of Possession" as owner of the property.

60.     On June 20, 2016, R. Dwayne Danner, counsel for BONYM, BANA, ReconTrust sent Ms. Nicholson a letter which stated in relevant part: "The reason there was at one time a zero balance on your loan was because of the July 3, 2012, foreclosure."

61.     On November 16, 2016, Nationstar Mortgage intervened in the lawsuit through its attorney, Kelly Harvey, by filing Defendant's Nationstar Opposition to Nicholson's Motion to Consolidate.

62.     On November 2016, Nationstar Mortgage's attorney, Lyndsey M. Cheek, appeared to argue against Nicholson's Amended Motion to Consolidate.

63.     On February 22, 2017, BONY, BANA, Recontrust,  and  Melanie Cowan filed its Response  to  Plaintiff's  Request  for  Initial  Disclosures which stated in relevant part: (b) The name, address, and telephone number of any potential parties RESPONSE: **Nationstar Mortgage LLC, current servicer of subject mortgage, c/o Kelly J. Harvey, Harvey Law Group, P.O. Box 131407, Houston, Texas 77219, 832-922-4000.**

64.     On May 18, 2017, Nicholson filed her Sixth Amended Petition which was Nicholson's live pleading at the time the court signed the "Amended Final Judgment" and the parties in the petition were (1) BONYM (legal title holder of Nicholson's homestead-preforeclosue mortgagee) (2) BANA (pre-foreclosure servicer) (3) Recontrust (foreclosure attorney) (4) Melanie Cowan (VP BANA/MERS/Recontrust) (5) Nationstar Mortgage (post-foreclosure servicer for BONYM) (6) Harvey Law Group (post-foreclosure debt collector for BONYM) (7) David

Stockman (substitute trustee for 2012 non-judicial foreclosure sale) (8) Countrywide Home Loans, Inc. (Grantor of foreclosed "Deed of Trust" on February 17, 2015)

65.     On May 18, 2017, Nicholson's brought the following claims against the Defendants in her Sixth Amended Petition:

     i.   VIOLATIONS OF § 12 OF THE TEXAS CIVIL PRACTICE & REMEDIES CODE (ALL DEFENDANTS)
     ii.  NEGLIGENCE PER SE (ALL DEFENDANTS)
     iii. GROSS NEGLIGENCE PER SE (ALL DEFENDANTS)
     iv.  DECLARATORY JUDGMENT
     v.   VIOLATIONS OF TEXAS PROPERTY CODE 51.002 (RECONTRUST, DAVID STOCKMAN, MELANIE COWAN)
     vi.  SUIT TO SET ASIDE SALE, CANCEL TRUSTEE'S DEED, RECOVER TITLE (ALL DEFENDANTS)
     vii. QUIET TITLE/TRESPASS TO TRY TITLE (ALL DEFENDANTS)
     viii. EXPUNGE/SEAL FORCIBLE ENTRY AND DETAINER SUITS
     ix.  (BANK OF NEW YORK MELLON)
     x.   FRAUD (ALL DEFENDANTS)

66.     Plaintiff filed her Sixth Amended Petition adding parties  CHLI, David Stockman, Nationstar Mortgage, LLC and HLG.

67.     To make one having an interest in an action a party, the petition must make him a party.  McDonald v. Miller, 90 Tex. 309, 39 S.W. 89.

68.     As the Restatement puts it, "[a] person who is named as a party to an action and subjected to the jurisdiction of the court is a party to the action," Restatement (Second) of Judgments § 34(1), p. 345 (1980) (hereinafter Restatement); "[t]he designation of persons as parties is usually made in the caption of the summons or complaint but additional parties may be named in such pleadings as a counterclaim, a complaint against a third party filed by a defendant, or a complaint in intervention," id., § 34, Comment a, Reporter's Note, at 347. Devlin v. Scardelletti, 536 U.S. 1, 7, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002).

69.     On May 30, 2017, Nationstar Mortgage, LLC, David Stockman, and CHLI  was properly served and the officer's return was filed in the Court.

70.     On June 1, 2017, the HLG was properly served and the officer's return was filed in the court..

71.     On June 5, 2017, BONYM, BANA, ReconTrust, and Melanie Cowan  filed its Motion to Strike Additional Parties.

72.     On June 15, 2017, the trial court heard BONYM, BANA, ReconTrust, and Melanie Cowan's Motion to Strike Additional Parties and subsequently granted the relief; striking only Nationstar Mortgage, LLC and Harvey Law Group after proper service and appearances in the lawsuit.

73.     As careful as the Court is not to exercise jurisdiction it does not have, it must be equally careful to exercise all the jurisdiction it does have, for error on either side violates the constitution equally. "[I]t is a time-honored maxim of the Anglo-American common-law tradition that a court possessed of jurisdiction generally must exercise it." Ohio v. Wyandotte Chems. Corp., 401 U.S. 493, 496-497, 91 S.Ct. 1005, 28 L.Ed.2d 256 (1971).

74.     In oft-quoted language as clear as it is eloquent, the great Chief Justice Marshall explained in  Cohens v. Virginia, 6 Wheat. (19 U.S.) 264, 5 L.Ed. 257 (1821):

> It is most true that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. 19 U.S. (6 Wheat.) 264, 400, 5 L.Ed. 257 (1821).

75.     An indispensable party, as has been said over and over, is one with such an interest in the subject-matter that a final decree between the parties before the court cannot be made without injuriously affecting his interest or without leaving the controversy in such a situation that final determination may be inconsistent with equity. Shields v. Barrow, 17 How. 130, 15 L.Ed. 158;

Barney v. Baltimore, 6 Wall. 280, 18 L.Ed. 825; Fourth Nat. Bank v. Carrollton R. R. Co., 11 Wall. 624, 20 L.Ed. 82.

76.      A trial court commits fundamental error by proceeding in the absence of an indispensable party because "[j]urisdiction over indispensable parties to a suit is as essential to the court's right and power to proceed to judgment as is jurisdiction of the subject matter"   USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 489 (Tex. 2018) citing Petroleum Anchor Equip., Inc. v. Tyra, 406 S.W.2d 891, 892 (Tex. 1966); City of Arlington v. Bardin, 478 S.W.2d 182 (Tex.Civ.App.1972, writ ref. n. r. e.); Eddowes v. Oswald, 621 S.W.2d 843, 846 (Tex.App.—Fort Worth 1981, no writ).

77.      All persons who have or claim a direct interest in the object and subject matter of the suit and whose interests will necessarily be affected by any judgment that may be rendered therein, are not only proper parties, but are necessary and indispensable parties. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472

78.      In a suit for cancellation of a written contract affecting title to or an interest in land, **a district court does not acquire com8plete jurisdiction until all necessary parties are brought within the jurisdiction of the court**. It has no jurisdiction to proceed to final judgment until that it done. This is subject to the qualification that the court may retain its potential jurisdiction wi2thout interference so long as it possesses the power to bring all necessary parties into court and subject them to its jurisdiction. It necessarily follows, however, that in a suit to cancel such a contract, where necessary parties are not within the jurisdiction of the court, and the court no longer possesses power to bring them under its authority, the court is without jurisdiction to litigate the question of the invalidity of the contract, and decree its cancellation. Royal Petroleum Corp. v. McCallum, 134 Tex. 543, 135 S.W.2d 958 (1940)).

79.      On August 18, 2017, the Court declared the Substitute Trustee's Deed was invalid.

80.     On December 12, 2017, BONYM executed a Corporate Assignment of Deed of Trust purporting to assign any interest it had in the foreclosed loan documents, subject of this lawsuit to Nationstar Mortgage, LLC.

**F. Nicholson vehemently contested the trial court proceeding to judgment in the absence of Nationstar Mortgage and the Harvey Law Group**

81.     On August 4, 2020, Nationstar Mortgage and HLG (stricken parties) appeared in the 342nd District Court's zoom hearing under the guise of a "special appearance", to oppose Nicholson's Motion to Reinstate Nationstar Mortgage and HLG and it was subsequently denied.

82.     On August 16, 2020, Nicholson filed Plaintiff's Verified Plea in Abatement" complaining of the "defect in parties" and challenging the court's jurisdiction to proceed to judgment in the absence of jurisdictionally indispensable parties that was subsequently denied.

83.     On August 21, 2020, Nicholson filed Plaintiff's Motion to Vacate/Reconsider Order Denying Plaintiff's Verified Plea in Abatement complaining the Court could not and should not proceed to judgment in the absence of jurisdictionally indispensable parties and the Court subsequently denied.

84.     On September 16, 2020, Judge Kimberly Fitzpatrick proceeded to judgment in the absence of Nationstar Mortgage and Harvey Law Group jurisdictionally indispensable parties.

85.     On March 31 2022, the Second Court of Appeals affirmed case 342-262692-12 timely appealed in case 02-20-00379-CV in the absence of jurisdictionally indispensable parties on the face of the record.

**G. Then-Judge Wade Birdwell and Judge Kimberly Fitzpatrick committed fraud upon the Court by striking and failing to rejoin Nationstar Mortgage and Harvey Law Group (stricken parties) after proper service, general appearances, and being granted relief in case 342-262692-12.**

86.     Nationstar Mortgage and the Harvey Law Group were properly served, appeared, and never file an answer in the case before they were requested to be stricken by BONYM's counsel.

87.     Nationstar Mortgage and the Harvey Law Group were jurisdictionally indispensable parties pursuant to the Texas Declaratory Judgment Act and Rule 39.

88.     Texas Declaratory Judgments Act, states that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." TEX. CIV. PRAC. & REM. CODE § 37.006(a). The Act uses different language than Rule 39 in describing who constitutes a necessary party and outlines different consequences for nonjoinder. While the Act simply clarifies that a "declaration does not prejudice the rights of a person not a party to the proceeding," id., Rule 39 states that "the court shall order that [the necessary party] be made a party," TEX. R. CIV. P. 39(a). Accordingly, Rule 39's requirements govern when a party is seeking to compel joinder of persons in a declaratory-judgment action. Crawford v. XTO Energy, Inc., 509 S.W.3d 906, 914 (Tex. 2017) citing (Brooks v. Northglen Ass'n, 141 S.W.3d 158, 162 (Tex. 2004)

## H.  Nationstar Mortgage and the Harvey Law Group were necessary parties under Rule 39(a)(1)

89.     Under Texas Rule of Civil Procedure 39, a person shall be joined as a party if in his absence complete relief cannot be accorded among those already parties, or he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (I) as a practical matter impair or impede his2 ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. TEX. R.CIV.P. 39. The rule permits a court to order that such a person be made a party. Id. However, Nationstar Mortgage

and the HLG met these definitions. Nationstar Mortgage and the HLG fell within the first category of Rule 39. This section requires the presence of persons who have an interest in the litigation so that any relief awarded will effectively and completely adjudicate the dispute. Brooks v. Northglen Ass 'n, 141 S.W.3d 158, 162 (Tex. 2004).

90.     Rule 39(a) requires the joinder of a person who is subject to service of process if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. Tex. R. Civ. P. 39(a)(1).

## I.  Nationstar Mortgage and Harvey Law Group were necessary parties under Rule 39(a)(2)

91.     Nationstar Mortgage and the HLG were necessary parties to adjudicate the dispute for quiet title, declaratory relief Plaintiff's obligations under the note and "Deed of Trust" are time barred, and fraud.

92.     Complete relief could not be had with the current parties because (1) Nationstar Mortgage purported to be the current noteholder and lienholder in the property the subject of the lawsuit; (2) HLG purported to be a debt collector for the foreclosed note that's subject of this lawsuit, purported to waive the lienholder's right to foreclose post-foreclosure; and an active participant in the post-foreclosure double dealing scheme.

93.     Nationstar Mortgage and the HLG also fell into the second category of Rule 39(a)(2). In order to be a person who "claims an interest relating to the subject of the action," a person must do something to actually claim an interest. Crawford v. XTO Energy, Inc.,509 S.W.3d

906, 913 (Tex. 2017). Nationstar Mortgage claims an interest in the property that is2 the subject of this lawsuit by virtue of the "2017 Assignment". The HLG purported to be a debt collector post-foreclosure for BONYM on the purcha8se money note,  the subject of this lawsuit

### J.      Nationstar Mortgage and the Harvey Law Group were absent indispensable parties under Rule 39(b)

93. Tex. R. Civ. P. 39. This rule "provides a pragmatic rather than mechanical approach to dealing with defects in parties." Cox v. Johnson, 638 S.W.2d 867, 868 (Tex. 1982) (per curiam)).

94.      Rule 39(b) is triggered when a person required to be joined under Rule 39(a) "cannot be made a party." TEX. R. CIV. P. 39(b). In that instance, the court "shall determine whether in equity and good consc2ience the action should proceed among the parties before it,… the absent person being thus regarded as indispensable.2 Crawford v. XTO 8Energy, Inc., 509 S.W.3d 906 (Tex.

95.      The trial court could not proceed to judgment in the absence of jurisdictionally indispensable parties, Nationstar Mortgage and Harvey Law Group in case 342-262692-12.

96.      When Nationstar was assigned the foreclosed note and Deed of Trust, it became an indispensable party to Nicholson's claims seeking claims seeking declarations as to the validity and legality of the "Substitute Trustee's Deed", "Deed of Trust",  and declaration the note was time barred. See Texas River Barges v. City of San Antonio, 21 S.W.3d 347, 357 (Tex. App. — San Antonio 2000, pet. denied) (stating that party to contract "is an indispensable party to any litigation that seeks to declare the contract void")

97.      Because the joinder of the Nationstar Mortgage and Harvey Law was both feasible and needed for a just adjudication, and because they were sued, served, and appeared;  the trial court judges committed fraud upon the Court by striking and failing to rejoin them when Nicholson repeatedly complained proceeding to judgment in their absence would be fatal. Veal, 159 S.W.2d 472.

98.      While "double your pleasure, double your fun" may be a clever advertising slogan for a chewing gum, it has no application to duplicative efforts in litigation. Potentially multiple foreseeable independent cases based on the same facts and allegations would also be a substantial, unnecessary waste of the Nicholson's time and and judicial resources.

### K. Kelly Harvey, licensed Texas attorney, (BONYM's attorney post-foreclosure) committed Fraud on the Court by fabrication of evidence

99.     On April 19, 2016, Kelly Harvey manufactured an "Abandonment of Acceleration" as attorney for lienholder BONYM almost four years after BONYM was conveyed a "Substitute Trustee's Deed" as owner of the property on August 2, 2012.

100.    Kelly Harvey's manufactured evidence, Abandonment of Acceleration, was material in BONYM and its agents procuring judgment against Nicholson on her quiet title, trespass-to-try-title, and declaratory relief declaring the note time-barred.

101.    BONYM's acceleration was irrevocable because it foreclosed, was conveyed a Substitute Trustee's Deed and subsequently granted possession in an eviction suit as owner of the property on November 1, 2012.

102.    If a note or deed of trust secur8ed by real property has an acceleration clause, the cause of action accrues "when the holder actually exercises its option to accelerate." Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001). Acceleration of a note can be abandoned by agreement of the parties or other unilateral actions of the lender, such as sending a notice of default requesting less than the full amount of the loan or accepting payments without exacting any available remedies. Boren v. U.S. Nat'l Bank Ass'n, 807 F.3d 99, 105 (5th Cir. 2015) (emphasis added). Indeed, it is counterintuitive to argue that BONYM abandoned acceleration when it actually foreclosed and was granted possession of the Nicholson's homestead as owner of the property post-foreclosure.

103.    Kelly Harvey's manufactured evidence, "Abandonment of Acceleration Letter", was another act in furtherance of BONYM and its agents scheme to save its face from an invalid foreclosure sale, escape a legal malpractice lawsuit, and using the Courts as vehicles of fraud to cover up its error, harass Nicholson through protracted litigation, and steal Nicholson's homestead.

104.    Nicholson's lawsuit against BONYM for wrongful foreclosure, gave rise to a legal malpractice action against its foreclosure attorney, Recontrust Company, wholly owned subsidiary of Bank of America, N.A. See Gulf Coast Inv. Corp. v. Brown, 821 S.W.2d 160 (Tex.1991) (The Court in Gulf Coast held that tolling applied when an attorney's malpractice in conducting a non-judicial foreclosure resulted in a wrongful foreclosure action by a third-party against the client.)

## COUNT I – FRAUD ON THE COURTS

105.    Plaintiff re-alleges and re-avers paragraphs 1 through 104 and pages 1-28 above and sets forth the same with equal force, as if stated fully herein.

106.    By the forgoing conduct, the Defendants practiced a fraud on this Court and other federal

and state courts.

107.    The Defendants' fraud on the courts is manifestly unjust and shocks the conscience. The

Defendants' fraud directly harmed Nicholson who was forced to march through a series of

appeals to defend her homestead.  Moreover, the Defendants' fraud was intended to and did

subvert the fair and unbiased processes of this Court and the Court of Appeals.

108.    As a result of the Defendants' fraud on the courts, Nicholson was deprived of the

judgment to which she was lawfully entitled.

109.    The proper measure of the Plaintiff's damages for the Defendant's  fraud on the courts is

$1,000,000 (one million dollars)

WHEREFORE, Plaintiff demands judgment against the Defendants for damages, interest,

costs, and for such other relief as the Court deems fair and just. By reason of the Defendants'

fraud on the courts, the Plaintiff respectfully asks the Court to:

a.  Grant Declaratory relief that Defendant BONYM, Justice Wade Birdwell, Judge

Kimberly Fitzpatrick, and Kelly Harvey  perpetrated a fraud on the state court in

Texas state court  Case  *Harriet Nicholson v. Bank of New York Mellon et al, 342-*

*262692-12, 342nd Judicial District Court, Tarrant County, Texas* and *Nicholson v.*

*THE BANK OF NEW YORK MELLON, No. 02-20-00379-CV (Tex. App. Mar. 31,*

*2022).*

b.  Grant declaratory relief Nationstar Mortgage, LLC and the Harvey Law Group were

indispensable parties need for just adjudication pursuant to Texas Rules of Civil

*Harriet Nicholson v. Bank of New York Mellon et al, 342-262692-12, 342nd*

*Judicial District Court, Tarrant County, Texas* and *Nicholson v. THE BANK OF*

*NEW YORK MELLON, No. 02-20-00379-CV (Tex. App. Mar. 31, 2022).*

c.  Grant declaratory relief Kelly Harvey, licensed attorney, fabricated evidence, "Abandon of Acceleration" was material in obtaining judgment in case

d.  Grant declaratory relief Nationstar Mortgage, LLC and the Harvey Law Group were indispensable parties need for just adjudication pursuant to Texas Rules of Civil 39 in *Harriet Nicholson v. Bank of New York Mellon et al, 342-262692-12, 342nd Judicial District Court, Tarrant County, Texas* and *Nicholson v. THE BANK OF NEW YORK MELLON, No. 02-20-00379-CV (Tex. App. Mar. 31, 2022).*

e.  Grant declaratory relief the judgments in cases  *Harriet Nicholson v. Bank of New York Mellon et al, 342-262692-12, 342nd Judicial District Court, Tarrant County, Texas* and *Nicholson v. THE BANK OF NEW YORK MELLON, No. 02-20-00379-CV (Tex. App. Mar. 31, 2022)* are void for want of jurisdiction for lack of indispensable parties, Nationstar Mortgage and Harvey Law Group.

f.  Grant declaratory relief Justice Wade Birdwell committed fraud on the Court by striking Nationstar Mortgage, LLC and the Harvey Law Group, jurisdictionally indispensable parties that were properly served and appeared in  *Harriet Nicholson v. Bank of New York Mellon et al, 342-262692-12, 342nd Judicial District Court, Tarrant County, Texas*,

g.  Grant declaratory relief Judge Kimberly Fitzpatrick committed fraud on the Court by failing to rejoin Nationstar Mortgage, LLC and Harvey Law Group, jurisdictionally indispensable parties, in case *Harriet Nicholson v. Bank of New York Mellon et al, 342-262692-12, 342nd Judicial District Court, Tarrant County, Texas*.

h.  Grant declaratory relief Judge Kimberly Fitzpatrick committed fraud on the Court by permitting Nationstar Mortgage and Harvey Law Group (purported non-parties)  to appear in case *Harriet Nicholson v. Bank of New York Mellon et al, 342-262692-12,*

*342nd Judicial District Court, Tarrant County, Texas* under the guise of "special appearances".

i.   Grant declaratory relief Judge Kimberly Fitzpatrick committed fraud on the Court by granting Nationstar Mortgage and Harvey Law Group (purported non-parties) relief in case *Harriet Nicholson v. Bank of New York Mellon et al, 342-262692-12, 342nd Judicial District Court, Tarrant County, Texas* purported stricken parties.

j.   **VACATE** judgments in cases Case: *Harriet Nicholson v. Bank of New York Mellon et al, 342-262692-12, 342nd Judicial District Court, Tarrant County, Texas* and *Nicholson v. THE BANK OF NEW YORK MELLON, No. 02-20-00379-CV (Tex. App. Mar. 31, 2022)* for fraud on the court, want of jurisdiction for lack of indispensable parties, and denial of due process*.*

    a.   Award Plaintiff (1) compensatory damages of $1,000,000 for ten years of pain and suffering caused by Defendants' deceit and fraud; (2) costs of litigation estimated at no less than $15,000, (3) further relief as this Court deems fair and just.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages, interest, costs, prejudgment interest in excess of $1,015,000 (one million, fifteen thousand dollars), and for such other relief as the Court deems fair and just.

Respectfully submitted,
/s/ Harriet Nicholson

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 25th, 2022, the foregoing document was filed with the clerk of Court through the CM/ECF and will serve all identified in the Service List to receive Notices of Electronic Filing.

/s/ Harriet Nicholson